Pendleton, President.
The decision of Fairfax county court, in January 1789, “That laying the county levy was contrary to the bill of rights and constitution of government, and unjust and oppressive,” concerning the whole state, in every important article of government, deserves the most serious and attentive consideration.
The article in the bill of rights, supposed to be alluded to, is the sixth : “ Elections of members to serve as representatives of the people, in assembly, ought to be free; and that all men, having sufficient evidence of permanent common interest with, and attachment to, the community, have the right of suffrage, and cannot be taxed or deprived of their property for public uses without their own consent, or that of their representatives so elected, nor bound by any law to which they have not, in like manner, assented, for the public good.”
The evident purpose of this was to secure the freedom of elections j to give the principle of the right of suffrage; and to declare that those having that right cannot be taxed by laws to which they do not assent by themselves or representatives. To maintain that great principle of freedom. *140 that all laws and taxation derive their force from the people, and to allow that convenient mode of giving their consent by representation, instead of the impossible one of doing it personally.
It is supposed the objection then is founded upon this, that the levy is a tax; and that the justices, not being chosen, are not the representatives of the people of the county, and therefore restrained from such taxation.
It might, be questioned in strict construction, whether if the representatatives of the people were by law to give a general power of taxation to others for public use, it might not be said that the tax was laid by the consent of the represeptatives, since what I do by another I do myself: but, as such a general transfer of a power conferred from personal confidence, would be very unreasonable, I mean not to justify it.
But that general power is very distinguishable from one limited to levy on the people of a certain district the price of certain specific necessaries, not for the public, but their individual use, judged by their representatives to be indispensable. I say specific, since it is so, as to the subject; the price could not be ascertained, but all concerned were interested to preserve moderation.
This article is not new, but coeval with representation; yet this distinction has ever prevailed, and is the ground of laws, giving powers to corporations to tax their citizens for local purposes. Our original division into districts was by counties, for which courts were held for the administration of justice. Court houses, prisons, &c. were unavoidably necessary; and, as far back as we can trace our laws, the expenses of those were defrayed by a levy laid by the court on the titheables in the county, without objection or complaint, that I ever heard of, as to the power, though there have been instances of both, as to the improper exercise of it.
To discover whether the convention in May 1776, did not understand the article in this sense, it may be necessary *141 to observe that there were then in force laws authorizing the county courts, to levy for building and keeping in repair court houses, prisons, pillories, stocks and ducking stools; bridges, causeways and directions in highways; clearing rivers and creeks: for neglecting which they were subject to a fine, as they were to a suit for not performing their contracts; which were declared binding. Yet the second ordinance, after the constitution of government, providing for continuing the administration of justice, has a clause, “that the common law of England, certain statutes, together with the several acts of the general assembly of this colony now in force, so far as the same may consist with the several ordinances, declarations and resolutions of the general convention, shall be the rule of decision; and shall be considered as in force, until the same shall be altered by the legislative power.” If it be said that the declaration in the bill of rights, excepts these laws out of the force of that clause, I submit it, whether that construction would not be unfair, which, under general words used for another purpose, should exclude, from a provision for continuing the general administration of justice in the state, so many particular laws: all of which so essentially concern the administration of justice. But to shew the sense .of the convention in the clearest manner, let us recur again to the objection. It is singly this, that the justices are not elected by the people. The constitution provides for the appointment of justices, without intermeddling with their power and duty; which, that is to say, the appointment, is therefore referred, by the clause pointing that out, to the governour with the advice of the council. Can it be supposed that so essential a part of their duty as the levy, escaped the recollection of the convention, when they fixed the mode of appointment? Or is it not more reasonable to presume, that they thought that circumstance not of sufficient weight to control the mode ? I will hazard a conjecture that they reasoned thus; a popular election of magis *142 trates, is improper for the general purpose of decision between government and offenders, and between contending citizens. The levy might make such election more proper for that purpose; but this, as the lesser evil, must give way to the other; and is the less to be dreaded, as the magistrates being generally men of fortune, are interested to prevent imposition. Suffice it to say, that the convention not having, in the constitution, restrained the power of laying levies, abundantly proves, that they did not consider the article in the bill of rights as extending to the case; which is further confirmed by the ordinance before referred to, authorizing justices in office, upon taking an oath to the new government, to execute the office in all things according to Jaw, without excepting levies.
That this has also been the general sense of the country for the twelve following years, is proved by every court’s having constantly laid levies, without doubting their power, which have been paid without objection. The assembly’s having, in a number of instances, recognized such levies; and, in the revised law concerning roads, passed in 1785, expressly empowered courts to levy for the value of lands through which new roads pass, and costs, for the direction as to earth or stones; for timber used in building bridges by the overseer; or for bridges or causeways let by their order; their contracts for which are declared binding for levy or recovery by suit.
Hence 1 conclude that this general article was never intended to reach this case; and, am of opinion, that the words do not.
The foregoing opinion was sent, with others, to the reporter, by judge Pendleton, for publication; but without any information when, or upon what occasion, it was delivered. It was afterwards cited by the reporter in the first argument of the glebe cause, before judge Pendleton, as a case decided by the court of appeals; which nobody denied.